IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTY MANESS, | : | No. 3:14cv1966 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner | : | |
| of Social Security Administration, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Plaintiff Marty Maness's (hereinafter "plaintiff") appeal of the Defendant Commissioner of Social Security Administration's (hereinafter "defendant") denial of his application for Supplemental Security Income Benefits (hereinafter "SSI"). The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff was born March 31, 1963, and last worked in 2002. (Doc. 9, Administrative Record (hereinafter "R.") at 68, 135). Plaintiff previously collected SSI, from 2002 to 2008. (R. at 34, 38). Plaintiff's SSI terminated in July 2008 due to a period of incarceration. (Id.) He was released from prison in July, 2011, and applied for benefits again. Thus, July 1, 2011 is the alleged disability onset date. (R. at 34).

Plaintiff testified that he suffers from lower back pain, neck pain, a rotator-cuff injury, COPD, diabetes, and glaucoma. (R. at 34-35). Plaintiff reads on a fourth-grade level, limiting his ability to perform work tasks involving reading, writing, and comprehension. (Id.) Plaintiff previously worked in construction and as a supervisor for a landscaper. (R. at 56-57).

On July 1, 2011, plaintiff filed an application for SSI, claiming disability as of May 1, 2002. (R. at 16, 68). Plaintiff's claims were initially denied on October 7, 2011, and plaintiff requested a hearing on October 17, 2011. (Id.) The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on March 26, 2013, at which plaintiff and Sheryl Bustin, an impartial vocational expert, appeared and testified. (Id.) In a decision issued May 10, 2013, the ALJ rejected plaintiff's claim, finding that plaintiff was not "disabled" and thus not entitled to SSI. (R. at 16-26). Plaintiff requested review by the Appeals Council on May 10, 2013. (R. at 5). The Appeals Council denied plaintiff's request on September 29, 2014. (Id.) Plaintiff initiated the instant appeal by filing a complaint with this court on October 9, 2014. (Doc. 1).

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In reviewing a Social Security appeal, this court must determine whether "substantial evidence" supports the ALJ's decision.  See, 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The

United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial

evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates SSI claims with a five-step sequential analysis. 20 C.F.R. § 416.920(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920(a)(4)(I)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4)(iv). A plaintiff's residual functional capacity is "the most [the plaintiff] can still do despite [his]

6

limitations."  20 C.F.R. § 404.1545(a)(1).[1]

In applying the five-step sequential analysis in the instant case, the ALJ found the following: Step 1- Plaintiff has not engaged in substantial gainful activity since July 1, 2011 (R. at 18); Step 2- Plaintiff has the following severe impairments: back impairment, diabetes mellitus, obesity, COPD, shoulder impairment, and reading impairment (i.e., reads at fourth grade level) (Id.); and Step 3- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 19).

The ALJ next determined plaintiff has the residual functional capacity to: perform less than the full range of medium work, "limited to routine, repetitive tasks involving a GED of 1,1,1," and "cannot do any reaching overhead with the dominant right upper extremity."  (R. at 20).  Plaintiff must also "have no concentrated exposure to fumes, odors, dusts, gases, or poor ventilation," and "no exposure to hazards such as unprotected heights or dangerous equipment."  (Id.)  Then the ALJ proceeded to Step 4 of the sequential evaluation and concluded that plaintiff is unable to perform any past relevant work.  (R. at 24).

---

[1] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Sheryl Bustin, an impartial vocational expert, testified at the hearing regarding jobs someone with plaintiff's limitations, as defined by the ALJ, could perform. Based upon the vocational expert's testimony, the ALJ concluded that considering the plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform. Such jobs include laundry laborer and machine feeder. (R. at 25). Thus, the ALJ found that the plaintiff is not disabled from employment, but rather, "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.)

Plaintiff's appeal alleges that the ALJ erred in the following three ways: 1) The ALJ failed to list plaintiff's glaucoma as a serious impairment at step 2; 2) The ALJ failed to accord adequate weight to the consistent opinions of plaintiff's treating physician and the consultative examiner; and 3) The jobs identified by the vocational expert do not meet the requirements of the ALJ's residual functional capacity findings. We will discuss these issues below.

**I. Plaintiff's Glaucoma**

As noted above, the ALJ found that plaintiff had the following severe

impairments: back impairment, diabetes mellitus, obesity, COPD, shoulder impairment, and reading impairment. (R. at 18). Plaintiff argues that the ALJ erred in not including plaintiff's glaucoma when listing plaintiff's severe impairments. The court disagrees.

Plaintiff argues that because his visits to the optometrist were "frequent" for treatment of a glaucoma flare-up, and because "glaucoma is generally a chronic condition," the ALJ should have found plaintiff's glaucoma to be a severe impairment. (Doc. 10, Pl.'s Br. in Supp. at 15). Plaintiff cites no evidence that glaucoma is a chronic condition, nor for how that should apply in this case. Plaintiff does point to a specific time period, between July and October 2011, when he says he received prolonged treatment for a flare-up, allegedly contradicting the ALJ's finding that the records reflect his symptoms were mild and lasted only for days.

A review of this time period, however, demonstrates that Dr. Joey Lane, plaintiff's optometrist, documented that plaintiff's symptoms were "mild," as plaintiff complained of his distance vision "getting a little blurry." (Id.) Dr. Lane reported his condition was improving and that he expected "continued response with drops." (R. at 377-78). Dr. Lane further

reported in August 2011, that plaintiff reported his eye "is feeling pretty good." (Id.) In September, plaintiff reported his eye "felt like [it had] a thumb pushing against" it, but when he used a drop, it cleared up by evening. (R. at 376). Further, Dr. Lane expressly noted that the "[s]everity was described as mild," and "[t]he duration is days." (R. at 374-76).

The evidence simply does not support plaintiff's assertions that his glaucoma was a severe impairment. Plaintiff's contemporaneous statements regarding the severity and frequency of his ocular flare-ups belie his descriptions of the symptoms on this appeal. Substantial evidence supports the ALJ's determination that plaintiff's glaucoma is not a severe impairment.

**II. Plaintiff's Treating Physician and Consultative Examiner**

Plaintiff next argues that the ALJ erred in according significant weight to the opinions of the state agency reviewer, while according limited weight to the opinions of his treating physician, Dr. William Milroth, and a consulting physician, Dr. Amatul Khalid.

In the Third Circuit,

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight,

> especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations and quotations omitted).

The court focuses on the opinion of Dr. Milroth, the treating physician, because a finding that the ALJ's rejection of his conclusions would be dispositive of this analysis. Dr. Milroth treated plaintiff for at least nineteen months, from August 2011 to March 2013. (R. at 3-4). Dr. Milroth concluded that Maness would never be able to lift and/or carry over twenty pounds, because pain radiates down his right leg when lifting over that weight. (R. at 302). Dr. Milroth further concluded that Maness can stand and/or walk for less than two hours, and can sit for less than two hours, in an eight hour workday. (R. at 302-03). Dr. Milroth also found that Maness will need to lie down at unpredictable intervals, for

11

fifteen minutes out of every three hours. (R. at 303).

Dr. Milroth opined that due to radicular pain, Maness can not push with his legs or climb, balance, crouch, bend, or twist, and can only occasionally stoop, kneel, or crawl. (R. at 303-04). Dr. Milroth concluded that in Maness's condition, it would be dangerous for him to work "on heights or around machinery." (R. at 305). Ultimately, Dr. Milroth concluded that Maness's impairments will frequently interfere with his ability to complete work tasks, and that he will likely be absent from work more than three times per month. (R. at 307). Based on Maness's restrictions, Dr. Milroth found that Maness is not capable of any work. (Id.)

The ALJ indicated that he gave limited weight to Dr. Milroth's opinion because it was not consistent with plaintiff's treating source records and clinical examination findings. (R. at 23-24). The ALJ fails to recognize, however, that Dr. Milroth **is** the treating source and those records are his own. The record is replete with test results and reports from examinations ordered by Dr. Milroth. (See, e.g., R. at 270-73, 320-38, 347-54, 360-69). When he formed his opinions as to plaintiff's physical impairments, he did so with all of the data amassed over the duration of plaintiff's treatment of

12

at least nineteen months.  The ALJ may not substitute his own "credibility judgments, speculation or lay opinion" for that of the treating physicians, and "may not make speculative inferences from medical reports." Morales, 225 F.3d at 317.  Here, that is exactly what the ALJ has done.

Further, the ALJ in general dismissed any medical evidence he found to have been based on plaintiff's "subjective complaints" of pain, particularly with respect to the lower extremities.[2]  Upon reconsideration, the ALJ should bear in mind that pain in itself may be a disabling condition.  Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981).  The Third Circuit Court of Appeals has explained that "even pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and is so intense as to be disabling will support a claim for disability benefits."  Taybron v. Harris, 667 F.2d 412, 415 (3d Cir. 1981) (internal citation omitted).  Moreover, where pain complaints are supported by medical evidence, they should be given great weight, and when a

---

[2] Oddly, the ALJ does not address plaintiff's back pain, which does seem to be consistent with the objective medical evidence.  For example, Dr. Milroth specifically opined that plaintiff must alternate standing and sitting during a workday, with a break to lie down for fifteen minutes about every three hours, and that plaintiff should never climb, balance, crouch, bend, or twist, because such activities trigger plaintiff's radicular pain.  (R. at 303-04).

claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount a claimant's pain without contrary medical evidence. Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985). Finally, the treating physician is in a far better position than the ALJ or a non-treating, non-examining physician to determine the magnitude and effect of their patient's pain. As such, substantial evidence fails to support the ALJ's assessment of Dr. Milroth's treating physician opinion.

### III. Jobs Identified by the Vocational Expert

Because we have decided to remand for reconsideration due to the ALJ's error in weighing the opinion of plaintiff's treating physician, plaintiff's objection to the jobs selected by the vocational expert is moot.

### Conclusion

For the above-stated reasons, the court finds that substantial evidence does not support the ALJ's determination. The ALJ improperly rejected plaintiff's treating physician's opinion and substituted his own. We will remand this action to the ALJ for further consideration consistent with this memorandum. An appropriate order follows.

**Date:** 9/28/2015      **s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**